UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW STEPHEN SHEPLER,

         Plaintiff,

- against -

MICHAEL COLLURA,

         Defendant.

**OPINION AND ORDER**

17 Civ. 10254 (ER)

Ramos, D.J.:

 Matthew Stephen Shepler ("Shepler"), proceeding *pro se*, brings this action under 42 U.S.C. § 1983, against Michael Collura ("Collura"), a New York City Police Department ("NYPD") detective. Shepler alleges, *inter alia*, that he was falsely arrested and maliciously prosecuted for allegedly stalking and harassing his Congressperson. Collura now moves to dismiss the entire action on the basis that Shepler's guilty plea bars his § 1983 claims, and that the Court should decline to exercise supplemental jurisdiction for his state claims. For the reasons stated below, Collura's motion to dismiss Shepler's § 1983 claims is GRANTED.

## I. BACKGROUND

### A. Procedural Background[1]

On September 29, 2017, New York State filed a three-count complaint (the "criminal complaint") against Shepler in the Criminal Court of the City of New York, County of New

---

[1]The Court takes judicial notice of the misdemeanor complaint filed on September 23, 2017 in the Criminal Court of the City of New York, County of New York against Shepler, and Shepler's conviction by guilty plea as well as a temporary protective order against him, both entered on December 18, 2017. *Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005) (a New York State prosecution is a matter of public record that a court may take judicial notice of). However, the Court bears in mind that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

York. *See People v. Shepler*, No. 2017NY050546 (N.Y.Crim.Ct. Sep. 23, 2017) ("Criminal Compl."); *see also* Doc. 57 Ex. B. Shepler was charged with two counts of stalking in the fourth degree under the New York Penal Code § 120.45(2) and (3) respectively, and one count of harassment in the second degree under the New York Penal Code § 240.26(3). *Id*. The criminal complaint was drafted by Assistant District Attorney Aaron Davidowitz and sworn to by Collura, an NYPD detective, based on information reported by Congressperson Carolyn Maloney ("Maloney") and her staff, as well as Collura's prior warning to Shepler directing him to cease all communications and contact with Maloney. *Id*.

On December 18, 2017, Shepler was offered, and eventually pled guilty to a lesser included offense of disorderly conduct before presiding judge Josh Hanshaft. As part of the plea agreement, he was sentenced to a conditional discharge with the condition that he submit to five months of treatment at a mental health facility. *See* Doc. 57 Ex. D. According to the transcript of the allocution, the following exchange took place.

> The Court: "Okay. Sir, your attorney says you're interested in pleading guilty to a violation, which is not a crime, it is disorderly conduct, with the promise sentence of the Court being a conditional discharge. The condition being five months of continued treatment through Ana's Place[2], to abide by the conditions that they lay out for you from Ana's Place with a final and full order of protection; is that your understanding, sir?"
>
> The Defendant: "I believe so, yes."
>
> The Court: "Has anybody provided you or promised you anything other than what I just said to take this plea?"
>
> The Defendant: "No."
>
> The Court: "…Has anybody promised you anything other than what I said, sir?"
>
> The Defendant: "Not that I am aware of."

---

[2] According to its website, Ana's Place is a 108 bed 24/7 emergency shelter for homeless men diagnosed with mental illness and/or substance abuse.

2

> The Court: "Well, I want you to be sure. In other words, if there are any other promises for you to take this plea today, then I want to know about it."
>
> The Defendant: "No other promises, Your Honor."
>
> The Court: "So you're doing this freely and voluntarily?"
>
> The Defendant: "Yes."
>
> The Court: "You've had enough time to discuss this plea with your attorney?"
>
> The Defendant: "Yes, Your Honor."

*Id*. at 4-5.

On the day of Shepler's plea, Judge Hanshaft also entered an order of protection, pursuant to which Shepler was required to stay away from and refrain from all communication with Maloney. The order of protection expired in December 2019. *Id*.

Shepler initially commenced the instant action against the City of New York, the New York Police Department, the New York Department of Correction, the George R. Vierno Center, and Doe Defendants on December 28, 2017. Pursuant to an order to amend by Judge Colleen McMahon of this district, Shepler filed the amended complaint on March 28, 2018 naming only one "John Doe" Defendant. Doc. 13. On May 24, 2018, he filed the second amended complaint (the "SAC"), naming Collura as the only Defendant. Doc. 17.

### B. Factual Background

At some point between June 18 and 23, 2017, Collura received a report from Maloney and her staff that on the night of June 18, 2017, Shepler called Maloney's home phone three times—at 3:25 A.M., 3:45 A.M., and 7:00 A.M—respectively. The first two calls were unanswered and went to voicemail. Shepler left messages both times, divulging his name and his phone number. On the third call, Shepler allegedly spoke to Maloney and stated "[y]ou can help me get a job"

and "can I cohabitate with you?" Maloney reported that the voicemails and phone calls "placed her in fear for her physical safety, and made her nervous and anxious." Criminal Compl. at 2. Maloney's staff also reported that Shepler had previously submitted a resume to Maloney's office earlier in the year, in February 2017.[3]

After receipt of the report, Collura reached out to Shepler via phone calls and text messages and set up a meeting. Shepler alleges that the phone calls and text messages from Collura constituted harassment. On June 23, Collura and Shepler met, and according to the criminal complaint, Shepler admitted to making the phone calls, and Collura told him to cease all communications and contact with Maloney.

On July 10, 2017, Maloney's staff reported that Shepler attended a breakfast event hosted by Maloney at her home.[4] On September 27, 2017, Shepler went to Maloney's office asking for her while stating "I have something…she'll know soon enough."[5] On the same day, Maloney's staff made a second complaint to Colllura reporting both incidents. After receiving the second report, Collura arrested Shepler for stalking Maloney.[6] Two days later on September 29, 2017, the criminal complaint sworn out by Collura was filed against Shepler.

---

[3] According to Shepler, he was interviewed by Maloney's staff after he had submitted his resume, but nothing in the record indicates that the interview took place.

[4] According to Shepler, he was invited to this event. He further alleges that a photograph of him, Maloney and Miranda X. Mo was taken at the event, though he did not produce the photograph in the instant action. Instead, Shepler has attached to the SAC a copy of what appears to be a business card of Miranda X. Mo. *See id*. Ex. A. According to the business card, Miranda X. MO is the treasurer of the AmericaChina Public Affairs Institute. *See id*. Additionally, Shepler has attached to the SAC photos of a medallion allegedly given to him by Maloney at the same event.

[5] According to Shepler, he only went to Maloney's office to request that she take some action about recent reported incidents of petite larceny and robbery within her congressional district. Shepler attached two incident information slips concerning the alleged robbery and petite larceny within the 19th Precinct on August 9, 2016 and September 25, 2017 respectively. *Id*.

[6] Shepler alleges that when the arrest happened, Collura repeatedly questioned him with no good reason about whether he had any drug uses and falsely stated to him that stalking was a felony charge.

4

Shepler alleges that his arrest and detention, and Collura's phone calls and text messages constitute "extreme and outrageous conduct" by Collura, and that he was caused to fear for his physical well-being and safety. During his five months of mental treatment, which was imposed as a condition of his guilty plea, Shepler was allegedly diagnosed with depression by a Psychiatrist, Dr. Leonard Vando. *Id*. ¶¶ 47-51.

As a result of his prosecution, Shepler alleges that he often awakes depressed and returns home to a life of hopelessness at night. *Id*. ¶ 52. He was prescribed a nine-week supply of Brexipiprazole, an antipsychotic, by Dr. Vando in addition to Hydroxyzine and Escitalopram.[7] *Id*. ¶ 53. Shepler also claims that he suffered additional injury to his reputation due to an article by New York Post titled "Carolyn Maloney's Alleged Stalker Dodges Jail." *Id*. ¶ 58. Shepler also asserts in the SAC state law claims of intentional infliction of emotional distress and a negligent infliction of emotional distress.

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard under Rule 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (internal citation omitted). Accordingly, a plaintiff is required to support his claims

---

[7] Hydroxyzine is commonly used to treat anxiety while Escitalopram is an antidepressant.

with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation and quotation marks omitted).

### B. *Pro Se* Plaintiff

The same standard applies to motions to dismiss in cases brought by *pro se* plaintiffs. *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *5 (S.D.N.Y. Mar. 29, 2017) (citing *Zapolski v. Fed. Repub. of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011)). The Court remains obligated to construe a *pro se* complaint liberally, and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citation omitted). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

## III. DISCUSSION

Section 1983 grants a right of action to any "citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law. 42 U.S.C. §

1983. In order to state a claim under § 1983, shepler must allege that: (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Construing Shepler's pleadings liberally, he alleges four causes of action under § 1983 including: (1) false arrest; (2) malicious prosecution; (3) First Amendment retaliation; (4) excessive bail under the Eighth Amendment. The claims for false arrest and malicious prosecution implicate Shepler's right to be free from unreasonable seizure as provided by the Fourth Amendment and his right to due process as guaranteed by the Fourteenth Amendment.

### A. False Arrest

In analyzing § 1983 claims for false arrest, "[courts in the Second Circuit] have generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citing *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)) (internal quotation marks omitted)). Under New York Law, a plaintiff wishing to state a claim for false arrest must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003)(citing *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotation marks omitted). "[W]hen faced with a claim for false arrest, [courts] focus on the validity of the *arrest*, and not on the validity of each charge." *Davenport v. Cnty. of Suffolk*, No. 99 Civ. 3088 (JFB), 2007 WL 608125, at *5 (E.D.N.Y. Feb. 23, 2007) (quoting *Jaegly*, 439 F.3d at 154) (emphasis in original). "[T]he existence of probable cause is an absolute defense to a false claim," *Jaegly*, 439 F.3d at 152, and a valid conviction is conclusive evidence of probable cause for the arrest. *Bowles v.*

*State*, 37 F.Supp.2d 608, 611 (S.D.N.Y. 1999)(citing *Heck v. Humphrey*, 512 U.S. 477, 489 (1994))("No claim may be brought pursuant to 42 U.S.C. § 1983 for false arrest or malicious prosecution if the plaintiff was convicted of the offense for which he was arrested."). "Since a guilty plea is the equivalent of a conviction, a guilty plea will also bar a § 1983 false arrest claim." *Wims v. New York City Police Dept.*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *3 (S.D.N.Y. July 20, 2011) (citing *Hernandez v. City of New York*, No. 00 Civ. 9507, 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004)). This rule holds true even where plaintiff pleads guilty to a lesser offense than the offense for which he was initially arrested. *See, e.g. Timmins v. Toto*, 91 F. App'x 165, 166 (2d Cir. 2004)(summary order)(internal citations omitted).

Here, Shepler's guilty plea is fatal to his false arrest claim because by pleading guilty to the lesser offense of disorderly conduct, Shepler concedes that there was probable cause to arrest him. *See id*. Indeed, due to Shepler's plea, the Court need not examine whether there was probable cause for each charge against Shepler. *See Davenport v. Cnty. of Suffolk*, 99 Civ. 3088 (JFB), 2007 WL 608125, at *3-5 (E.D.N.Y. Feb. 23, 2007) (determining it was not necessary to establish probable cause for plaintiff's arrest for possession of marijuana where there was probable cause to arrest plaintiff for driving under the influence of drugs). Accordingly, Shepler's false arrest claim is hereby dismissed.

**A. Malicious Prosecution**

In order to state a claim for malicious prosecution under New York law, a plaintiff must show '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" *Mitchell v. Victoria Home*, 434 F.Supp.2d 219, 226 (S.D.N.Y. 2006) (quoting *Posr v. Court Officer Shield # 207*,

180 F.3d 409, 417 (2d Cir. 1999)). Here, Collura contends that Shepler fails to sufficiently show either that the prosecution against him lacked probable cause, or that it terminated in his favor.

With respect to the existence of probable cause, Shepler argues that the plea could not support a presumption of probable cause for any charges brought against him because: (1) his confinement of fifty days violates New York Penal Law §§ 10.00(3) and 70.15(4); and that (2) the criminal complaint against him failed to mention certain evidence including the photograph allegedly of him and Maloney and the novelty medallion allegedly given to him by Maloney. On the first argument, while Shepler is correct that New York Penal Law § 10.00(3) and 70.14(4) state that a sentence for a violation may not exceed 15 days, the allocution transcript plainly shows that he was only sentenced to a conditional discharge with five months of outpatient treatment at a mental health facility. To the extent that Shepler may have confused his time spent in pretrial detention with his ultimate sentence, those two are not the same.

Shepler's second argument that his plea was unconstitutional because the criminal complaint against him failed to mention the medallion and the photograph of him and Maloney, is also unavailing. To begin with, Shepler does not allege that Collura had possession or even knowledge of them, only that the complaint against Shepler, which was drafted by an Assistant District Attorney, failed to include mention of them. Even if the Court were to infer that Collura had knowledge of the medallion and the photograph, Shepler cites to no authority, nor is the Court aware of any, that requires the criminal complaint to include mention of all the evidence the State had obtained.

Accordingly, the Court need not resolve in the instant motion whether there was probable cause for each individual charge against Shepler, because Shepler fails to establish a separate but necessary element of a claim for malicious prosecution, that the prior prosecution was terminated

9

in his favor. Here, the prosecution ended with Shepler's guilty plea and a protective order against Shepler. Shepler, in his opposition papers, has not attempted to argue, nor could he, that that the prosecution below terminated in his favor. *Timmins*, 91 F. App'x at 167 (finding that the prior proceedings did not terminate in favor of plaintiff when he pleaded guilty to a lesser offense). Accordingly, Shepler's malicious prosecution claim is hereby dismissed.

### B. Shepler's Other Causes of Actions

As discussed above, Shepler's guilty plea conclusively establishes that there was probable cause to arrest. In addition, "the existence of probable cause [for the arrest] defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive." *See Caravalho v. City of New York*, 732 F. App'x 18, 23 (2d Cir. 2018)(citing *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). Accordingly, Shepler's First Amendment retaliation claims is also hereby dismissed.

As for Shepler's Eighth Amendment excessive bail claim, Collura contends that Shepler cannot raise an entirely new claim for the first time in his opposition papers. The Court agrees. Although courts may rely on factual allegations in a *pro se* plaintiff's opposition papers in evaluating the legally sufficiency of his claims, entirely new causes of actions are not accorded such liberal treatment. *See Pandozy v. Segan*, 518 F. Supp.2d 550, 551 n. 1 (S.D.N.Y. 2007), aff'd, 340 F. App'x 723 (2d Cir. 2009) (new claims raised in *pro se* plaintiff's opposition papers not considered by the Court on a motion to dismiss); *Bernstein v. City of N.Y.*, No. 06 Civ. 895 (RMB), 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007) (same). Here, Shepler only referenced the term "Eighth Amendment" once in passing in the SAC in the context of his false arrest and malicious prosecution claims, and made the first factual allegation that he was denied revocation or reduction of a $5,000 bond in his opposition papers, *see* Doc. 62 at 3, making an

Eighth Amendment excessive bail claim inappropriate for review for the instant motion. In any event, even if Shepler had properly raised an Eighth Amendment claim in the SAC, it would fail both due to the fact that it is moot after Shepler's conviction, *see Flanagan v. United States*, 465 U.S. 259, 266 (1984) ("An order denying a motion to reduce bail may be reviewed before trail…becomes moot if review awaits conviction and sentence."); *United States v. Helmsley*, 864 F.2d 266, 269 (2d Cir. 1988) (same), and the fact that "[a] plaintiff cannot sustain a § 1983 action for excessive bail against a defendant who played no role in setting the bail amount." *Jackson v. Marshall*, No. 04 Civ. 3915(WHP), 2008 WL 800745, at *4 (S.D.N.Y. Mar. 25, 2008); *see also Estes-El v. State of N.Y.*, 552 F. Supp. 885, 889 (S.D.N.Y. 1982) ("Police officers who arrest an individual cannot be liable for the bail required of that individual."). Accordingly, to the extent that Shepler now seeks to assert an Eighth Amendment excessive bail claim, it is also dismissed.

In addition to asserting § 1983 causes of actions, Shepler also appears to assert New York state law claims of intentional and negligent infliction of emotional distress. However, under 28 U.S.C. § 1367 (c)(3), the Court may decline to exercise jurisdiction over any non-federal claims over which it has original jurisdiction. Having disposed of all of Shepler's federal claims at such an early stage, it would be inappropriate to adjudicate his state law claims. Therefore, the Court declines to retain jurisdiction over the state law claims and dismisses them without prejudice. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that, if the federal claims are disposed of before trial, "the state claims should be dismissed as well.").

## IV. CONCLUSION

For the reasons set forth above, Collura's motion to dismiss is granted. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 55, and close the case.

It is SO ORDERED.

Dated: February 13, 2020
      New York, New York

                                                            Edgardo Ramos, U.S.D.J.